IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs on March 20, 2007

**ALVIN KING**
**v.**
**SHELBY COUNTY GOVERNMENT CIVIL SERVICE MERIT BOARD**

An Appeal from the Chancery Court for Shelby County
No. CH-04-0335-2     Arnold B. Goldin, Chancellor

No. W2006-02537-COA-R3-CV - Filed June 13, 2007

This is the second appeal of a case involving the termination of a county employee. The petitioner was a deputy jailor for the County Sheriff's Department. His employment was terminated because he failed to report an injured inmate. The county's administrative board upheld the termination. The petitioner then filed a petition for writ of certiorari in the trial court. The trial court denied the writ, and the petitioner appealed. In the first appeal, the trial court's order was vacated and the cause was remanded for reconsideration under the standard of review set forth in the Uniform Administrative Procedures Act, see T.C.A. § 4-5-322. On remand, the trial court entered a revised order, affirming the termination. The petitioner now appeals the revised order. We affirm, finding that the petitioner received a fair hearing before the administrative board and that the board's decision was supported by substantial evidence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID E. FARMER, joined.

Darrell J. O'Neal, Memphis, Tennessee, for the Petitioner/Appellant Alvin King.

Martin W. Zummach, Germantown, Tennessee, for Respondent/Appellee Shelby County Government Civil Service Merit Board.

**OPINION**

This is the second appeal in this case by Petitioner/Appellant Alvin King ("King"), arising out of the termination of his employment as a deputy jailer for the Shelby County Sheriff's Department (the "Department"). *See King v. Shelby County Gov't Civ. Serv. Merit Bd.*, No. W2006-01079-COA-R3-CV, 2006 WL 2506718 (Tenn. Ct. App. Aug. 31, 2006). The underlying facts and pertinent procedural history set forth in our previous Opinion are reiterated below:

Alvin King . . . was employed by the Shelby County Sheriff's Department (the "Department") as a Deputy Jailer. On or about August 11, 2003, Mr. King was assigned to relieve another officer and to monitor and supervise the activities of a group of inmates on the fourth floor, K-pod of the Shelby County Jail. While Mr. King was supervising this group, one of the inmates, Terry Farris, complained of an injury to his eye. Mr. King procured ice for the inmate's eye, but did not report the incident as required by the internal policy of the Department.

On or about August 15, 2003, the Department opened an investigation through its Internal Affairs Division. The report issued by the Internal Affairs Division following its investigation indicates that Inmate Farris gave a tape-recorded statement, in which the inmate stated:[1]

> Farris stated five cell is where Officer King allows the inmates to go inside and fight. Farris stated he told Officer King he needed to see medical and Officer King said, "No." Farris said he told him again and Officer King, "Ain't never said nothing." Officer King kept walking around the pod . . . looking in the cell. . . . Farris reiterated Officer King having seen his eye because he walked right up to Officer King and told him what had happened.

Several other officers testified by tape-recorded statement to the Internal Affairs Division. According to the Internal Affairs Division Report, Mr. King's tape-recorded statement contained the following:

> Officer King advised he had a brief conversation with Farris. Officer King advised he asked Farris if he wanted to go to medical but he and Farris agreed to let it go, "They were going to let everything die." Officer King advised he did see Farris' eye and he did not send him to medical. Officer King acknowledged it being policy that if an inmate has any type of injury he is to see medical. Officer King further acknowledged he did not contact the Sergeant and he did not make any entry into the computer in reference to the incident. Officer King acknowledged making his rounds in the pod, seeing Farris and still not sending him to Medical. Officer King stated he went and got ice for Farris. Officer King advised he did not see the fight and he does not know what happened. Officer King acknowledged Farris did not say he actually had a fight with another inmate. Officer King stated there is no truth to the allegation that he allows inmates to fight in five cell.

The Internal Affairs Division concluded that, based upon the information gleaned during its investigation, Mr. King may be in violation of Departmental Rules

---

[1]This Internal Affairs Division Report was admitted as Exhibit 1 at the hearing before the Board.

and Regulations SOR 601 for Failure to Complete Official Reports,[2] and SOR 120 for Neglect of Duty.[3]

On September 8, 2003, a "Loudermill Hearing" was held in order to give Mr. King an opportunity to address the charges of violation of SOR 601 and SOR [120]. Lieutenant Opal Craine presided over the hearing, at which Ms. S. Renfroe appeared on behalf of the Department, and Corporal Charlie Hubbard [, King's union representative,] appeared on behalf of Mr. King. . . .

On or about September 10, 2003, Lieutenant Craine informed Mr. King by letter that, based upon the evidence adduced at the hearing, Mr. King was guilty of neglect of duty and that his position with the Department would be terminated effective September 11, 2003. The letter also informs Mr. King of his right to appeal.

Mr. King filed a timely appeal to the Shelby County Civil Service Merit Board (the "Board," or "Appellee"). A hearing was held before the Board on December 11, 2003. The Board ultimately upheld the charges against Mr. King. On or about December 19, 2004, the Board issued its Decision upholding termination of Mr. King's employment.

On February 17, 2004, Mr. King filed a petition in the Chancery Court of Shelby County for a Writ of Certiorari, and the court granted the writ on the same day. The Board filed its Answer on March 5, 2004. Mr. King's petition came before the trial court for hearing on April 25, 2006.[4] Following the hearing, on May 5, 2005, the trial court entered its "Order Denying Writ of Certiorari."

*King*, 2006 WL 2506718, at *1-2. Thus, King was charged with supervising inmates, and some of the evidence indicated that King would sometimes permit inmates to go to a certain area and fight, conduct obviously not permitted under Department policies. While King was supervising a group of inmates, one of the inmates, Farris, sustained an injury to his eye. King acknowledged that he failed to seek medical attention for the injury to Farris' eye and that he failed to report the injury, in contravention of Department policy. King's employment was terminated on this basis.

At the proceeding before Respondent/Appellee Shelby County Civil Service Merit Board (the "Board"), King's union representative, Charlie Hubbard, was scheduled to appear. King came late

---

[2]SOR 601 *COMPLETING OFFICIAL REPORTS:* An employee shall make reports promptly, accurately, completely, and in full conformity with specifications of the SCSO as required by his/her job position. An employee shall make all necessary reports as required as soon as possible and practicable before going off duty . . . .

[3]SOR 120 *NEGLECT OF DUTY:* (A) Each employee, because of his/her rank and assignment, is required to perform certain duties and assume certain responsibilities. Failure to properly function in these area[s] constitutes neglect of duty. This regulation prohibits any omission or failure to act by any employee of the SCSO, whether on duty or off duty, when such action is required by the stated policy, goals, rules, regulations, orders and directives of the SCSO. It applies to any employee who, through carelessness, inefficiency, or design, fails to implement the policy, goals, rules, regulations, orders, training, and directives of the SCSO. When a violation poses a risk to the safety or security of the public, fellow employees or inmates/detainees.

[4]We note that King was represented by counsel at this hearing.

to the Board hearing, after it was already in progress, and he learned upon his arrival that his union representative was not present. The record does not indicate that King asked for a continuance of the hearing. The hearing proceeded, culminating in the Board upholding the termination of King's employment.

King appealed the trial court's order to this Court, arguing that he was deprived of his constitutional and statutory rights at the hearing before the Board and that the Board's decision was not supported by substantial evidence. *Id.* at *2. In the first appeal, we vacated the trial court's order and remanded the case without reaching the merits because the trial court used an erroneous standard of review. *Id.* at *5. Based on the Tennessee Supreme Court's decision in *Tidwell v. City of Memphis*, 193 S.W.3d 555 (Tenn. 2006),[5] we held that the case should have been decided under the standard of review set forth in the Uniform Administrative Procedures Act ("UAPA"), see T.C.A. §§ 4-5-322, 27-9-114. *King*, 2006 WL 2506718, at *4-5. On remand, the trial court reviewed the case under this standard and, on October 25, 2006, it entered a revised order affirming the decision of the Board. From this order, King appeals for the second time.

On appeal, King asks this Court to review the same issues: (1) whether the trial court erred in not finding that he was deprived of his constitutional and statutory rights when the hearing before the Board proceeded without his legal representative present, and (2) whether the trial court erred in finding that the Board's decision was supported by substantial evidence.

As indicated above, this case is governed by section 4-5-322(h) of the Tennessee Code Annotated. This statute authorizes courts to affirm or remand an administrative agency decision and provides five statutory grounds for reversal or modification of such a decision. *See City of Memphis v. Civil Serv. Com'n*, No. W2004-00091-SC-R11-CV, 2007 WL 625374, at *5 (Tenn. Mar. 2, 2007). A court may reverse or modify an agency decision "if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions" are:

> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

T.C.A. § 4-5-322(h) (2005).

---

[5] The *Tidwell* decision dealt with the proper procedure for appealing decisions of civil service boards that affect the employment status of civil service employees. *Tidwell*, 193 S.W.3d at 559-60. The supreme court noted that, effective January 1, 1989, section 27-9-114 of the Tennessee Code Annotated was amended to eliminate review by common law writ of certiorari in these cases and to substitute in its place the judicial review provisions of the Uniform Administrative Procedures Act, see T.C.A. § 4-5-322. *Id.* at 559.

We turn first to King's argument that his constitutional and statutory rights were violated because the hearing before the Board proceeded without his union representative present. As noted in our previous Opinion, it is undisputed that King was a classified employee in the Shelby County civil service. *King*, 2006 WL 2506718, at *3. The terms of his employment, therefore, were governed by the Shelby County Civil Service Merit Act, which provides that a classified county employee may be terminated only for just cause. 1971 Tenn. Priv. Acts ch. 110 § 21. As such, classified county employees possess a property interest in their continued employment, and the State may not deprive them of that property interest without due process. *King*, 2006 WL 2506718, at *3 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)).

Fundamental to due process is the "opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Thus, when the State seeks to terminate a protected property interest, " 'notice and opportunity for [a] hearing appropriate to the nature of the case' " must precede the termination of that interest. *King*, 2006 WL 2506718, at *3 (quoting *Loudermill*, 470 U.S. at 541, 105 S.Ct. 1487 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."[6] *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

At the Board hearing in this case, aside from King's own testimony, the evidence consisted entirely of three exhibits—a copy of the Internal Affairs Report, photographs of inmate Farris' injuries, and a transcript of the previous Loudermill Hearing.[7] King was given the opportunity to, and did, examine each of the exhibits submitted at the hearing. He acknowledged that, prior to the hearing, he had received the Internal Affairs Report, and he conceded that the photographs accurately depicted inmate Farris' injuries. The transcript of the proceeding shows clearly that considerable efforts were made to ensure that King understood the procedural aspects of the hearing as well as the evidence. The hearing officer gave King instructions on how to give an opening and closing statement, and King proceeded accordingly. As noted above, at no point during the hearing did King

---

[6]The United States Supreme Court has "held that the gravity of depriving a person of his employment mandate[s] a pretermination hearing to provide the employee with an opportunity to respond to the charges against him." *Case v. Shelby County Civil Serv. Merit Bd.*, 98 S.W.3d 167, 173 (Tenn. Ct. App. 2002) (citing *Loudermill*, 470 U.S. at 545-46, 105 S.Ct. 1487). "[W]here the pretermination hearing has been less than a full evidentiary hearing, a more formal post-termination hearing is required." *Id.* (citing *Loudermill*, 470 U.S. at 547, 105 S.Ct. 1487; *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 261, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987)). "The pretermination and posttermination procedures are intertwined and must be reviewed together to determine whether due process has been satisfied." *Id.* (citing *Carter v. Western Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir. 1985)).

[7]Counsel for the Department also submitted the notice of the charges, the letter from Lieutenant Craine informing King that his employment was terminated, and the disciplinary action form setting forth the reasons for King's termination. At the hearing, King acknowledged that he received each of these documents, two of which he had previously signed.

request a continuance or otherwise indicate that he did not desire to go forward in the absence of his union representative. Overall, the record does not indicate that King was denied a fair hearing. His argument that the absence of his union representative resulted in the denial of a fair hearing is without merit.[8] Accordingly, we affirm the trial court's decision on this issue.

We turn next to the issue of whether the Board's decision is supported by substantial evidence. Section 4-5-322(h)(5)(B) of the Tennessee Code Annotated directs that, "[i]n determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." T.C.A. § 4-5-322(h)(5)(B) (2005). The statute does not define "substantial evidence," but courts of this State have generally defined the term as "something less than a preponderance of the evidence, but more than a scintilla or glimmer." *E.g., Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988) (citations omitted). Stated differently, substantial evidence is " 'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.' " *Southern Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984) (quoting *Sweet v. State Tech. Institute at Memphis*, 617 S.W.2d 158, 161 (Tenn. Ct. App. 1981)); *see also Jackson Mobilphone Co., Inc. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110 (Tenn. Ct. App. 1993).

King argues that the documentary evidence submitted to the Board was "improperly introduced," that he had no opportunity to contest it and was unprepared to object to it as hearsay. Without this evidence, he asserts, there would not be "substantial evidence" to support the Board's decision. As noted above, however, King examined and responded to each of the exhibits entered. We also note that hearsay evidence is generally admissible in administrative proceedings. *See, e.g., Case v. Shelby County Civil Serv. Merit Bd.*, 98 S.W.3d 167, 176 (Tenn. Ct. App. 2002). Overall, we find no error in the Board's consideration of the documentary evidence presented.

Moreover, it is undisputed that King saw the injury to inmate Farris' eye while on duty, and that he failed to report the injury or notify a supervisor or "medical" of the injured inmate in contravention of the Department's internal policy. King acknowledged these facts at the hearing before the Board. In light of these undisputed facts, as well as the documentary evidence, we find that there was ample evidence to support the Board's decision to uphold the termination of King's employment.

---

[8] In his appellate brief, King relies on our supreme court's decision in *Simmons v. Traughber*, 791 S.W.2d 21, 24 (Tenn. 1990). *Simmons*, however, is factually distinguishable from the instant case and inapposite.

The decision of the trial court is affirmed.  Costs of this appeal are to be taxed to Petitioner/Appellant Alvin King, and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE